Millar's Appeal

J. *Francis Yake, Jr.*, for appellant.

*Franklin R. Bigham* and *Keith & Bigham*, for school district.

SHEELY, P. J., August 7, 1937.—In this case the school board proceeded under the provisions of the Act of April 6, 1937, No. 52, amending the School Code of May 18, 1911, P. L. 309, in refusing to reëlect the defendant-teacher to his position as a teacher in said school district. After a hearing before the board held in compliance with said act the board found that the teacher was guilty of wilful and persistent negligence and persistent and wilful violation of the school laws and refused to reëlect the teacher. The teacher thereupon filed a petition in this court for an appeal and asked that the charges against him be heard by the court de novo.

The specific charges preferred against the teacher were that he was wilfully and persistently negligent in failing to assist the pupils in the pronunciation of spelling words and in failing to assist the pupils in solving problems of arithmetic. Also that he persistently and wilfully violated the school laws in that he did dismiss or expel two pupils from his school and failed to notify the secretary of the school board of such dismissal or expulsion.

At the hearing before the court the board called six children to prove the charge of negligence and two children and the secretary of the school board to prove the charge of violation of the School Code. The testimony offered on behalf of the school board was far from satisfactory, consisting for the most part of general statements. The children called to testify ranged in age from 11 years to 15 years, and it was naturally impossible for them to be specific as to a number of events occurring during the entire school term. The testimony of the

teacher was likewise general in character since no specific acts were charged against him. From the testimony it is impossible to make any specific findings of fact.

All the children testified that when they asked the teacher to assist them with arithmetic problems the teacher would tell them to go to their seats and try to solve the problems themselves, and that when they asked him to pronounce spelling words he would tell them to use the dictionary. This is admitted by the teacher and is explained by him to be the proper method to teach the children to be self-reliant and to teach them the use of the dictionary.

Upon trying to solve the problems themselves or to learn the pronunciation of words in the dictionary the children were very often successful. Sometimes when they were not successful they would not go back to the teacher for help but on other occasions they would go to him the second time. According to the testimony of some of the children he would sometimes then assist them. On other occasions he would tell them to try again or that he could not help them at that particular time and that they should wait until the class period.

According to the testimony of several of the children there were some problems which they never learned to solve, and some words which they never learned to pronounce. Two of the pupils testified that when they asked the teacher whether their work was correct he would answer: "If you do not know, how should I know?"

There was no testimony to show the number of times that help was refused or the circumstances under which the requests were made, although several of the pupils admitted that other classes were in session when they requested help. There was no testimony to show that help was ever refused after the pupil had tried to do the work himself when the teacher was not occupied with another class.

The teacher explained that he was always willing to assist pupils after they had made an honest effort to do

4

their work themselves, but that he was required to teach eight grades all of the required subjects, and that he averaged approximately thirty class periods per day. With this schedule it was not always possible to assist a pupil at the moment the help was requested, but the solution of all problems was explained in the proper class period by having the pupils who had the correct solution solve the problem on the blackboard. In spelling, the words were always pronounced in class periods when the pupils were required to write the words on paper. He admitted that he sometimes told the pupils that if they did not know whether their work was correct they should not expect him to know and explained that he did this on the theory that if they were sure they were using the correct method of solution and arrived at the correct answer they would be sure that their work was correct, and that by making this remark he was training the children to be self-reliant.

On the charge of persistent and wilful violation of the School Code, it was shown that on Friday, February 26th, the teacher informed two pupils that he was transferring them to another school in the district and that on the following Monday morning he again informed the pupils that they were to attend the other school, and that he failed to advise the secretary of the school board of this action. The teacher testified that he took this action because the children did not belong in his school and were properly assigned to the other school. He explained their presence in his school by the failure of the secretary of the board to furnish him with an assignment list and stated that after he discovered that the children belonged to the other school he permitted them to remain in his school until the deportment of one of the pupils raised a question in his mind as to his jurisdiction over them and his right to punish them. He then took it upon himself to transfer the pupils to the school to which they had originally been assigned.

It also appears from the testimony that on Tuesday, March 2d, several members of the school board and their

secretary called upon the teacher and he thereupon rein-
stated the pupils in his school. They continued to attend
his school for the remainder of the school year.

## Discussion

The constitutionality of the Act of April 6, 1937 (no.
52), commonly known as the Teachers' Tenure Act, is
not, and cannot be, questioned in this case; the board pro-
ceeded under the provisions of the act in failing to re-
elect the teacher, and the teacher followed the provisions
of the act in bringing this appeal. Under the act the bur-
den is placed upon the court to hear appeals from the ac-
tion of the board, and to affirm or reverse the action of
the board. In fulfilling this duty the court is bound by
the charges preferred by the board against the teacher
and the evidence adduced in support of those charges. The
function of the court extends no further than to determine
judicially whether the charges brought against the teacher
are established by the evidence. The wisdom of the act is
solely a question for the legislature, and if the board fails
to sustain the charges brought against the teacher by evi-
dence which is legally competent and relevant it is the
duty of the court to reverse the action of the board even
though the result may be that the board is forced to re-
tain a teacher whom they do not desire and who has lost
the confidence not only of the board but of the community
and the pupils. In fact, the filing of charges against a
teacher and a public hearing thereon by the court, even
though the court completely exonerates the teacher, would
of itself place the teacher in such a position before the
community that it would be practically impossible for him
to do effective work thereafter.

In passing upon the dismissal of or refusal to reëlect a
teacher the school board is performing a quasi-judicial
function and must consider the case and the evidence
from a strictly judicial viewpoint. This is entirely dif-
ferent from the viewpoint of the executive which is ex-
ercised by the board in employing a teacher and which,

prior to the Act of 1937, the board exercised in refusing to reëlect a teacher. From the executive viewpoint it might be desirable to terminate a contract for many reasons which the legislature has not seen fit to include as a cause for such refusal under the Act of 1937.

Under the School Code of May 18, 1911, as amended, the board of school directors could refuse to reëlect a teacher at the end of any term by giving the teacher notice thereof at least 60 days before the end of the term and without assigning any reason for its action. Under section 1208 of that act a teacher could be dismissed during the term on account of immorality, incompetency, intemperance, cruelty, negligence or for the violation of any of the provisions of that act. The amendment of April 6, 1937, places the refusal of reëlection and the dismissal during the term in the same category, and before a board may terminate the contract of a teacher by either method it must prove that the teacher has been guilty of immorality, incompetency, intemperance, cruelty, wilful and persistent negligence, mental derangement or persistent and wilful violation of the school laws. It will be noted that under the School Code of 1911 simple "negligence" or a single violation of the School Code was sufficient ground for a dismissal. Under the Act of 1937, however, the negligence must be "wilful and persistent" and the violation of the school laws must be "persistent and wilful". By the use of these adjectives in the amendment the legislature must have intended that something much more serious than a single act of negligence or a single violation of the School Code would have to exist. The word "wilful" ordinarily means intentional and conscious and the word "persistent" ordinarily implies firm and persevering in a course, design, or resolution.

We are not at all satisfied that the board has sustained the burden of proof upon it in supporting the charges brought against the teacher. His duty to assist individual pupils must necessarily be considered along with his duty to all of the pupils and to the requirements of the particu-

lar case. With 30 recitation periods per day it is obvious that a teacher would not have much time for individual assistance to each pupil. There is nothing in the evidence to show that help was ever refused at a time when the teacher was free to give help. While his failure to tell the pupils whether their work was correct cannot be commended, we cannot say that his failure to do so was negligence. Perhaps his theory of training was wrong, but his action in following that theory would not be negligence in the commonly accepted meaning of that term.

The teacher undoubtedly has no right to transfer pupils from his school to another school and he cannot excuse this action on the failure of the school board to furnish him with an assignment list. Sections 1425 and 1426 of the School Code provide for the enumeration of children and the assignment thereof to certain schools under the direction of the school board. Section 1405 of the code gives the board authority to permit any child to attend such other school as the board may deem proper. The assignment of children to the schools or the reassignment thereof, however, is solely a matter for the board to pass upon.

If the children in question were not assigned to this school the teacher should not have accepted them in the first place without permission from the board, but having accepted them and having permitted them to remain in his school for several months without objection from the board, he could not take it upon himself to transfer them to another school. His action in this respect was clearly a violation of the School Code and under the original act may have been a sufficient ground for dismissal.

However, as pointed out above, the amendment of 1937 requires that the violation be persistent and wilful, which would seem to imply a number of violations of the School Code or one violation repeatedly committed. The evidence in this case shows that within four days of the attempted transfer of the pupils, and when the matter was called to his attention by the school board, the teacher permitted

8

the children to return to his school. His violation of the School Code could not therefore be termed "persistent and wilful".

We conclude, therefore, that the school board has failed to sustain the charges preferred against the teacher and that its action in refusing to reëlect him must be reversed.

And now, August 7, 1937, upon hearing the appeal of John Z. Millar from the action of the Board of School Directors of Straban Township in refusing to reëlect said John Z. Millar as a teacher in said district, it appearing to the court that the charges preferred against said teacher by said board have not been sustained by the evidence, the action of said board of school directors in refusing reëlection to said teacher is hereby reversed and, unless said board of school directors has some other just grounds for refusing reëlection to said teacher, it follows that under the Act of April 6, 1937, the said teacher must be retained.

NOTE.—See Hay's Appeal, 29 D. & C. 614.